UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABIY YIFRU,<br><br>                              Plaintiff,<br><br>           -against-<br><br>DANIEL W. TIETZ, Acting Commissioner of the New York State Office of Temporary and Disability Assistance; ERIC L. ADAMS, Mayor of the City of New York; ADOLFO CARRION, JR., Commissioner of the New York City Department of Housing; GARY Jenkins, Commissioner of the New York City Department of Social Services,<br><br>                              Defendants. | 22-CV-1385 (LTS)<br><br>ORDER TO AMEND |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action under 42 U.S.C. § 1983, alleging that Defendants have violated his constitutional rights. Plaintiff alleges that he "is exempt from welfare work requirements" in the United States because of his credentials and prior employment contract at the Intellectual Property Office in Addis Ababa, Ethiopia. He contends that in 2003, his employment contract was "taken" in violation of his constitutional rights when he was issued a visa to the United States after winning the opportunity for a visa through a United States Department of State lottery. Plaintiff has requested more than 60 fair hearings in connection with his welfare benefits, and he states that "all requests are based on the same issue and facts."[1]

By order dated February 28, 2022, the Court granted Plaintiff's request to proceed *in forma pauperis* (IFP), that is, without prepayment of the filing fees. Plaintiff also seeks a

---

[1] (Complaint, ECF 2 at 32, ¶ 158.)

temporary restraining order and preliminary injunction (ECF 4-6).[2] For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see* Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis original).

## BACKGROUND

The following summary is drawn from Plaintiff's complaint. Plaintiff Abiy Yifru is originally from Ethiopia. He has a degree in chemical engineering from Addis Ababa University and had a civil service job at the Intellectual Property Office in Addis Ababa, Ethiopia. In 2003, he was selected via lottery for a visa to the United States. A "so-called sponsor" and neighbor's son "coerced Plaintiff to fill out an Application for Immigrant Visa and Alien Registration." (ECF 2 at 5, ¶ 23.) A Consular Officer from the Kentucky Consular Center, "with intent to take

---

[2] Although no summonses have yet issued, Plaintiff moved for entry of default judgment. (ECF 9-14.) The Clerk denied these requests based on deficiencies in Plaintiff's certificate and inadequate information showing that service was proper. Plaintiff now requests issuance of summonses. (ECF 15.)

Plaintiff's money as fees and to destroy his permanent employment contract," mailed him an appointment letter for an immigrant visa interview at the U.S. Embassy in Ethiopia. The Consular Officer failed to provide "notice about Unemployment Compensation." (*Id.* at ¶ 25.) Plaintiff's sponsor submitted an affidavit from a financial institution, which indicated that he would provide "[e]verything until [Plaintiff] leaves the house," which was "perjury." (*Id.* at ¶ 26.) At the appointment, the Consular Officer issued the visa without "giving [Plaintiff] notice about" unemployment benefits. (*Id.* at ¶ 30.)

Plaintiff contends that the purposes of issuing diversity visas include "to salvage the Welfare System by causing him [and others] to provide voluntary labor for no or little public assistance benefits" and to "revitalize the US economy in long term by obtaining skilled labor." (*Id.* at ¶ 32.) Plaintiff contends that "[t]herefore, [he] is not required to work in any other type of job," other than the skilled labor work he performed in Ethiopia. (*Id.* at ¶ 33.) He further argues that, "[c]onsequently, Plaintiff is exempt from welfare work requirements because finding the same type of job that he used to work is impossible and impractical being in an emergency homeless shelter."[3] (*Id.* at ¶ 34.)

Plaintiff arrived in the United States in November 2003, and went to the home of his sponsor in Silver Springs, Maryland. He stayed for four months "under intense domestic violence and extreme fear." (*Id.* at ¶ 35.) Plaintiff eventually moved to Washington, D.C., and worked as a cashier, despite being "exempt from the welfare work requirements." (*Id.* at ¶ 37.) Plaintiff describes in detail the difficulties he faced in the years that followed: He moved to West

---

[3] Plaintiff argues that, under New York Department of Social Services regulations, although homelessness does not provide an automatic exemption from employment requirements, the agency must consider other factors that would exempt him. (*Id.* at ¶ 34.)

Virginia, lived in substandard housing, and faced eviction, homelessness, and two false arrests. (*Id.* at ¶ 38-40.)

In April 2011, Plaintiff moved to New York. (*Id.* at ¶ 43.) He alleges that, on April 18, 2011, he was transferred to an assessment shelter, in violation of his rights. (*Id.* at ¶ 44.) A case worker maliciously included "deceptive records" that Plaintiff had a "personality disorder," "thought disorder," and "obvious mental health disorder," in his New York City Department of Homeless Services (DHS) records, in its Client Application and Rehousing Enterprise System (CARES), and in the federal Homeless Management Information System (HMIS). This allegedly was done in order to "mislead administrative law judges at fair hearings, . . . and traumatize Plaintiff by indefinite homelessness." (*Id.* at ¶ 48.)

Plaintiff details dozens of incidents involving problems with shelters and shelter residents, caseworkers who referred him to work programs or shelters, and security guards, including theft, violence, harassment, and substandard conditions in shelters. On October 9, 2014, Plaintiff received a disposition notice from the New York State Office of Temporary and Disability Assistance (OTDA). Plaintiff seems to argue that the decision violated the consent judgment in *Rodriguez v. Blum*, which requires that a complete case record be present at a hearing. Since 2014, Plaintiff has not returned to the required Work Experience Program (WEP), though he continued to receive notices every two weeks about work requirements. (*Id.* at ¶ 81.) Plaintiff brought a complaint in the New York State Supreme Court, New York County but, on February 17, 2015, it was dismissed. (*Id.* at ¶ 86.)

On May 20, 2020, Plaintiff's "emergency homeless shelter assistance" was discontinued "due to [Plaintiff's independent living plan (ILP)] and bed signing" problems. (*Id.* at ¶ 124.) Soon thereafter, on May 30, 2020, due to the Covid-19 pandemic, he was transferred to a double-

occupancy hotel-based shelter. On August 27, 2020, a homeless resident "attacked" Plaintiff and stole his cell phone. (*Id.* at ¶ 128.)

On October 19, 2020, Plaintiff requested a referral for the "CityFEHPS," that is, the Family Homelessness and Eviction Prevention Supplement program, but was not awarded any benefits; instead, he was "coerced to sign an [independent living plan] and to go to [a] clinic for physical and psychiatric exams." (*Id.* at ¶ 131.)

On August 5, 2021, an NYC Human Resources Administration (HRA) worker called Plaintiff to recertify his eligibility for benefits. (*Id.* at 135.) Job Center 013 "reduced his home relief grants without notice after recertifying him." (*Id.*) On September 9, 2021, Plaintiff requested a fair hearing on the ground that, two days earlier, on September 7, 2021, the Job Center had reduced his cash grant and restaurant allowance from $123.50 to $22.50, without notice (*Id.* at 66.) He requested that aid be continued pending the hearing. (*Id.* at 67.) Plaintiff attaches a notice dated September 12, 2021, which states that the "State Commissioner has not directed the local district to continue your aid unchanged pending the outcome of the hearing." (*Id.* at 69-70.) Plaintiff's fair hearing (#8343922l) was scheduled for October 14, 2021. He does not plead any facts about whether he received a disposition but states that, on October 21, 2021, his emergency shelter was discontinued "because of [independent living plan] and fire drill." (*Id.* at ¶ 136.)

On November 30, 2021, Plaintiff's emergency homeless shelter assistance was again discontinued "because of [independent living plan]." (*Id.* at 137.)

On January 24, 2022, Plaintiff again requested a fair hearing, indicating that it was for the following reason:

> Since August 18, 2021, I am getting only $45 [public assistance]. I am in a shelter and as per 18 NYCRR 352.8f, the standard of need for applicant who resides in a

public shelter for the homeless is the sum of $158, $14.10 and $11 is $183. Total is $690.[4]

(*Id.* at 75.) In the same hearing request, Plaintiff states:

> I am using PO Box for my mails and going downtown business and law library to file a civil right for a housing subsidy. Additional cost of meals as per 18 NYCRR 352.7 (c) for all meals in a restaurant is $64 and for extra allowance is $36. Total $500.

(*Id.* at 76.)[5]

Plaintiff brings claims under section 1983 for violations of his rights to equal protection and due process under the Fourteenth Amendment; his rights under the Takings Clause of the Fifth Amendment; and his rights under the New York State Constitution, Article I, §§ 6-7, 11.

Plaintiff contends that (1) he was wrongfully denied his right to aid pending a hearing; (2) he should not be denied "home relief" grants on the basis that he resides in an emergency shelter; (3) he is exempt from work requirements but Defendants have reduced and discontinued his benefits "without notice" on this basis and "coerced and compelled him to work any job,"

---

[4] Plaintiff cites N.Y. Comp. Codes R. & Regs. tit. 18 § 352.8(f), which provides in relevant part: "A single person who resides in a shelter for the homeless who has applied for and is found eligible for safety net assistance must be paid a monthly cash allowance of $45, reduced by any available income in accordance with section 352.29 of this Part. The remainder of said standard of need is to be met through the provision of items of need by the shelter."

[5] Plaintiff cites N.Y. Comp. Codes R. & Regs. tit. 18 § 352.7(c), which provides:

(c): Additional cost of meals. Each social services district must provide for the additional costs of meals for persons unable to prepare meals at home or who do not otherwise receive meals in their residences in accordance with the following schedule: Monthly allowances to be added to appropriate monthly grants and allowances for combinations of restaurant meals and meals prepared at home or meals otherwise provided in the residence, including sales tax.

Dinner in a restaurant $29.00

Lunch and dinner in a restaurant $47.00

All meals in a restaurant

Additional special restaurant allowance as described below $64.00.

N.Y. Comp. Codes R. & Regs. tit. 18 § 352.7

even though he has brought more than 60 requests for fair hearings, all of which "are based on the same issue and facts" (*id.* at ¶ 158); (4) he is entitled to a housing subsidy from the HCV assistance program but has been denied because "the agency did not accept applications from the general public" (*id.* at 165), and has not been approved for other housing programs, among other reasons, because Defendants have allegedly used federal funds "to construct affordable apartments for high income earners" (*id.* at 170); and (5) he had a protected property interest in his employment in Ethiopia and Defendants have deprived him of that property interest, through conduct that "shocks the conscience" and violates his property rights, entitling him to appointment of counsel.

Plaintiff sues the Acting Commissioner of the New York State OTDA; the Commissioners of the New York City Department of Social Services and the Department of Housing; and New York City Mayor Eric Adams. Plaintiff seeks an order requiring Defendants to provide him aid at the level he previously received, plus home relief grants. He also seeks a declaration that he is exempt from work requirements and that Defendants are enjoined from imposing work requirements on him.

## DISCUSSION

### A.   Pleading Deficiencies

#### 1.   Short and Plain Statement

The Court is obliged to construe *pro se* pleadings liberally, and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman*, 470 F.3d at 474 (emphasis in original). The "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), nevertheless has its limits: To state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Here, Plaintiff's complaint includes events arising during a nineteen-year period, from 2003 to the present. The majority of the events described in Plaintiff's complaint took place years or decades ago. Defendants have no apparent relationship to many of the events in the complaint, many of which arose outside New York. He includes allegations about dozens of incidents, including thefts, violence, arrests, homelessness, and evictions. Plaintiff's complaint is not a short and plain statement showing that he is entitled to relief and therefore does not comply with Rule 8.

2.      Joinder of Unrelated Claims and Parties

Plaintiff's many unrelated claims against different parties do not appear to be properly joined in one action. Rule 18 of the Federal Rules of Civil Procedure permits a plaintiff to join as many claims as he has against a particular defendant. *See* Fed. R. Civ. P. 18(a). Under Rule 20 of the Federal Rules of Civil Procedure, persons may be joined in one action as defendants if: "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20.

"Although courts have interpreted Rule 20(a) liberally to allow related claims to be tried within a single proceeding, 'the mere allegation that Plaintiff was injured by all Defendants is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a).'" *Clay v. Doe*, No. 20-CV-7692, 2020 WL 6151436, at *1 (S.D.N.Y. Oct. 20, 2020) (quoting *Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126-27 (2d Cir. 1970)). If Plaintiff chooses to file an amended complaint, as permitted below, the Court directs him to comply with federal rules prohibiting joinder of multiple unrelated claims against different defendants.

3.      Timeliness

Many of Plaintiff's claims under section 1983 appear to be time-barred. The statute of limitations for section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). Plaintiff knew of his injuries when they occurred, and his claims therefore accrued at that time. Accordingly, all of Plaintiff's claims arising more than three years before he filed this complaint on February 18, 2022 (that is, all claims arising before February 18, 2019) are time-barred.

Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds); *see also Abbas*, 480 F.3d at 640 (concluding that district court should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on statute of limitations grounds).

If Plaintiff amends his complaint, and the amended complaint includes any claim arising more than three years before he filed the original complaint on February 18, 2022, he must include any facts showing why the claim should not be deemed time-barred. The doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (citation omitted). The statute of limitations may be equitably tolled, for example, when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired. *See Pearl*, 296 F.3d at 82-83.[6]

## B.    Takings Clause Violation

The Takings Clause of the Fifth Amendment, which is applicable to the states through the Fourteenth Amendment, states that no "private property [shall] be taken for public use, without just compensation." U.S. Const., amend. V. "[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Knick v. Township of Scott, PA*, 139 S. Ct. 2162, 2170 (2019) (overruling *Williamson Cnty. Reg. Planning Comm. v. Hamilton Bank*, which required property owners to exhaust state court remedies before a federal Takings Clause claim was ripe).

Plaintiff contends that, in 2003, his employment contract was "taken" in violation of his constitutional rights when he was issued a visa after winning the opportunity to do so through a United States Department of State lottery. He further argues that consular officials failed to give

---

[6] In addition, New York provides by statute for other circumstances in which a limitations period may be tolled. *See, e.g.*, N.Y. C.P.L.R. § 204(a) (where commencement of an action has been stayed by court order), *id.* at § 204 (where a dispute has been submitted to arbitration but is determined to be non-arbitrable), id. at § 207(3) (defendant is outside New York at the time the claim accrues), *id.* at § 208 (plaintiff is disabled by infancy or insanity).

him notice about unemployment benefits. First, any claim under section 1983 for a violation of

the Takings Clause based on Plaintiff's relinquishment of his civil service job in Ethiopia in 2003

is time barred. Next, although Plaintiff includes conclusory language suggesting that various

individuals (a neighbor, his sponsor, consular officials) "coerced" him to accept the visa, Plaintiff

does not allege that any of the State and City officials named as defendants in this action were

personally involved in the alleged violation of Plaintiff's rights. Finally, Plaintiff does not plead

any facts that plausibly show that his civil service job in Ethiopia was taken for public use,

without just compensation, and he thus fails to state a claim under the Takings Clause. It would

be futile for Plaintiff to replead this claim in an amended complaint, and the Court denies him

leave to do so.

**C.      Due Process Violations**

   1.      Procedural Due Process

"The fundamental requisite of due process of law is the opportunity to be heard . . . at a

meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)

(citations omitted). Where the government deprives a plaintiff of some interest pursuant to an

established procedure, due process is generally satisfied so long as some form of hearing is

provided before the individual is finally deprived of the property interest. *Nnebe v. Daus*, 644

F.3d 147, 158 (2d Cir. 2011).

Public assistance benefits "have long been afforded constitutional protection as a species

of property protected by the federal Due Process Clause." *Kapps v. Wing*, 404 F.3d 105, 112 (2d

Cir. 2005) (quoting *Goldberg*, 397 U.S.at 262 & n.8); *see also M.K.B. v. Eggleston*, 445 F. Supp.

2d 400, 432 (S.D.N.Y. 2006) ("Persons who are qualified to receive welfare benefits have a

legitimate claim of entitlement to such benefits."). In the context of public assistance benefits,

due process generally requires pre-deprivation notice and an opportunity to be heard. *Goldberg*,

397 U.S. at 260-61; *Hart v. Westchester Cty. Dep't of Soc. Servs.*, No. 98-CV-8034 (KNF), 2003
WL 22595396, at *4 (S.D.N.Y. 2003).

Here, Plaintiff makes conclusory allegations that his benefits were repeatedly reduced
"without notice" and that his requests for his benefits to continue unaffected pending hearings
were denied. He also includes, however, factual allegations that seem to contradict his assertion
that he had no notice of the denial of benefits or of the reasons therefor. Plaintiff alleges that he
has brought more than 60 requests for fair hearings, all of which "are based on the same issue
and facts" (*id.* at ¶ 158). Plaintiff appears to refer, among other things, to his argument that he is
not required to satisfy work requirements because he is unable to find work comparable to his
civil service position in Ethiopia. Plaintiff's allegation that he has litigated the same issue more
than 60 times suggests that he was on notice of the reasons for reduction in his benefits. Plaintiff
also alleges that his benefits were reduced following his recertification decision, which also
would have put him on notice of the redetermination of his benefits and the reasons for any
reduction. In addition, Plaintiff was heard on his request to continue benefits pending the fair
hearing, before deprivation of these benefits was final. *Nnebe*, 644 F.3d at158 (some form of
hearing is provided before the individual is finally deprived of the property interest). Plaintiff's
allegations are thus insufficient to plead that he was deprived of public assistance benefits
without pre-deprivation notice and an opportunity to be heard.

Where a person is deprived of a property right because of a random and unauthorized act,
rather than through the operation of established state procedures, due process is satisfied if the
state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533
(1984); *Rivera–Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006)
(holding that "[w]hen the state conduct in question is random and unauthorized, the state satisfies

procedural due process requirements so long as it provides meaningful post-deprivation remedy."). Under New York law, access to a fair hearing pursuant to N.Y. Soc. Serv. Law § 22 and 18 N.Y.C.R.R. § 358, and the availability of further review in the state courts in an Article 78 proceeding have been found to be constitutionally adequate post-deprivation procedures to challenge adverse determinations in connection with government entitlement programs. *See Banks v. HRA*, No. 11-CV-2380, 2013 WL 142374, at *3 (E.D.N.Y. Jan. 11, 2013); *Vapne v. Eggleston*, No. 04-CV-565 (NRB), 2004 WL 2754673, at *5 (S.D.N.Y. Dec. 1, 2004).

If Plaintiff is alleging that he was deprived of benefits due to unauthorized actions, rather than an established state procedure, his remedy is to seek post-deprivation process. Plaintiff does not allege that he sought review of any adverse fair hearing determination by filing in state court an Article 78 proceeding, which has been deemed an adequate post-deprivation remedy. See *Vialez v. New York City Hous. Auth.*, 783 F. Supp. 109, 114 (S.D.N.Y. 1991) ("[W]here a plaintiff alleges a deprivation of property in violation of the due process clause, the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts. If so, there will be no claim before the federal court, whether or not plaintiff took advantage of the state procedure."). Given the availability of adequate state remedies, Plaintiff fails to state a claim that any unauthorized act deprived him of a property interest without due process. He thus fails to state a claim under section 1983 for a violation of his right to procedural due process.

Because Plaintiff proceeds *pro se*, and it is not clear that it would be futile to grant him leave to replead in order to assert some cognizable claim in connection with his public assistance benefits, the Court grants Plaintiff leave to replead his claim that he was denied due process in connection with a particular benefits determination. To comport with Rule 8, Plaintiff must provide in his amended complaint a short and plain statement of the claim showing that he is

entitled to relief,. He must identify the particular benefits determination that he challenges, and must explaining how he was deprived of due process.

2.    Substantive Due Process

Plaintiff contends that he had a protected property interest in his employment in Ethiopia and Defendants have deprived him of that property interest, through conduct that "shocks the conscience" and violates his constitutional rights, entitling him, among other things, to appointment of counsel. The Due Process Clause of the Fourteenth Amendment has a substantive component that bars certain government actions "'regardless of the fairness of the procedures used to implement them.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195-96 (1986). A substantive due process claim also faces an additional hurdle: the defendant's conduct must also be found to be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (quoting *Lewis*, 523 U.S. at 848 n. 8 (internal quotation marks omitted). In determining whether conduct shocks the contemporary conscience, "conduct intended to injure in some way, unjustifiable by any government interest, is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849. By contrast, "negligently inflicted harm is categorically beneath the threshold." *Id.*

Here, Plaintiff's allegations also do not suggest any conduct by government officials that "rise[s] to the conscience-shocking level." *Id.* Moreover, the allegations are insufficient to allege that Defendants, who are city and state officials, were personally involved in playing any role in the termination of Plaintiff's employment in Ethiopia in 2003, when he came to the United

States. *See Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) ("To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official . . . ."). Plaintiff thus fails to state a claim for a violation of his right to substantive due process.

## D.     Equal Protection

"The Equal Protection Clause essentially prohibits the disparate treatment of similarly situated individuals." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005); *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) ("To prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class."). "[C]laims of race-based discrimination under the Equal Protection Clause . . . require that intentional discrimination be alleged in a non-conclusory fashion." *Traylor v. Hammond*, 94 F. Supp. 3d 203, 215 (D. Conn. 2015) (citing *Clyburn v. Shields,* 33 F. App'x 552, 555 (2d Cir. 2002) (summary order)).

Plaintiff invokes the Equal Protection Clause but includes only conclusory allegations explaining his claim. He alleges that the rejection of his credentials from Ethiopia and his "valid employment contract" is based on "blatant bias and bigotry." (ECF 2 at ¶ 142.) Plaintiff further alleges that New York City Mayor Eric Adams and Commissioners Tietz, Carrion, and Jenkins interfered with Plaintiff's rights "because he is an alien immigrant" (ECF 2 at ¶ 183). The complaint does not, however, allege that any benefits decision was based on either Plaintiff's national origin or his immigration status.[7] Plaintiff's complaint does not include any non-

---

[7] Plaintiff alleges that, in October 2021, he received his "permanent resident card (*id.* at ¶ 63).

conclusory factual allegations that could give rise to an inference that any defendant took any action against Plaintiff based on intentional discrimination due to his race or alienage.

Plaintiff also seems to suggest that he was denied certain benefits geared toward eviction prevention because he is homeless. Homelessness is not a suspect class for purposes of an Equal Protection analysis. *See, e.g., Joel v. City of Orlando*, 232 F.3d 1353, 1357 (11th Cir. 2000) ("Homeless persons are not a suspect class."); *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 298 (4th Cir. 2019) ("Alcoholics are surely worthy of social care and solicitude, but they, like the homeless, are not a constitutionally protected class." citing *Mitchell v. Comm'r of the Soc. Sec. Admin.*, 182 F.3d 272, 274 (4th Cir. 1999)) (Wilkinson, J., dissenting). In cases of discrimination based on non-suspect classifications, "the equal protection guarantee of the Constitution is satisfied when the government differentiates between persons for a reason that bears a rational relationship to an appropriate governmental interest." *Able v. U.S.*, 155 F.3d 628, 631 (2d Cir. 1998). Plaintiff's allegations suggest that, as someone who is homeless, he is not similarly situated to non-homeless persons applying for funds designated for eviction prevention. Moreover, there is a rational basis for treating those who meet program criteria differently from those who do not. Plaintiff's allegations thus do not state a section 1983 claim for a violation of his rights under the Equal Protection Clause.

E.     **State Law Claims**

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

**F.    Motions for Injunctive Relief and Appointment of Counsel**

Plaintiff seeks immediate relief in connection with the reduction in his welfare benefits on September 9, 2021. (ECF 6 at 1, ¶ 6.) Plaintiff has already requested and received a fair hearing on this claim, but he does not plead information about the disposition.

To prevail on a claim for preliminary injunctive relief, a plaintiff must show: (1) that he is likely to suffer irreparable harm and (2) either (a) a likelihood of success on the merits of his case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. *See UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F. 3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2000). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

The allegations of the complaint are unclear, but it appears that Plaintiff has repeatedly been notified that the reduction or termination of his benefits was based on (1) the rejection of his argument that he is exempt from work requirements; (2) his alleged failures to comply with an independent living plan; and (3) the government's conclusion that he is ineligible for certain

benefits that he seeks. Plaintiff's remedy, if he disagreed with the disposition of his September 9, 2021 fair hearing request, was to appeal the decision in an Article 78 proceeding.

Although Plaintiff's allegations demonstrate that he has serious needs, the complaint does not show that he has a likelihood of success on the merits of his claims because it appears that he received the pre-deprivation process that he was due and that post-deprivation remedies were also available to him. Plaintiff's submissions thus do not demonstrate a likelihood of success on the merits, and the Court denies his request for preliminary injunctive relief.

Because Plaintiff's complaint does not show a likelihood of success on the merits, the Court also denies his request for the Court to seek *pro bono* counsel. The factors to be considered in ruling on an indigent litigant's request for counsel include the merits of the case, Plaintiff's efforts to obtain a lawyer, and Plaintiff's ability to gather the facts and present the case if unassisted by counsel. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *Hodge v. Police Officers,* 802 F.2d 58, 60-62 (2d Cir. 1986). Of these, the merits are "[t]he factor which command[s] the most attention." *Cooper*, 877 F.2d at 172. Plaintiff's motion for counsel is denied without prejudice. The Court attaches to this order, however, a flyer about the New York Legal Assistance Group (NYLAG), which Plaintiff may wish to contact for assistance.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

Because it is not clear that it would be futile for Plaintiff to replead his claim in connection with his recent reduction in welfare benefits, the Court grants Plaintiff 30 days' leave to amend his complaint to detail this claim.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint. It appears, however, that it would be futile for Plaintiff to replead claims in connection with his former employment in Ethiopia, and claims

arising before 2019 (absent allegations showing equitable tolling of the limitations period). The
Court also cautions Plaintiff that, if he asserts multiple unrelated claims against different
defendants, joinder of such claims and defendants in a single action will likely be improper.

## CONCLUSION

Plaintiff's requests for injunctive relief and for appointment of an attorney to represent
him are denied. (ECF 4-5.) Plaintiff is granted leave to file an amended complaint setting forth
claims concerning the recent reduction of his welfare benefits that complies with the standards
set forth above. If Plaintiff wishes to file an amended complaint, it must be submitted to this
Court's Pro Se Intake Unit within 30 days of the date of this order, caption the document as an
"Amended Complaint," and label the document with docket number 22-CV-1385 (LTS). An
Amended Complaint form is attached to this order. No summons will issue at this time. If
Plaintiff does not file an amended complaint within the time allowed, the Court will enter
judgment dismissing the federal claims for failure to state a claim upon which relief may be
granted and declining to exercise supplemental jurisdiction of the state law claims.

A flyer about the New York Legal Assistance Group (NYLAG) is attached to this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would
not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an
appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant
demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   March 29, 2022
         New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____
Write the full name of each plaintiff.

-against-

_____

_____

_____
Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

_____CV_____
(Include case number if one has been
assigned)

Do you want a jury trial?

☐ Yes     ☐ No

# AMENDED

# EMPLOYMENT DISCRIMINATION COMPLAINT

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

## I.      PARTIES

### A.   Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

First Name                          Middle Initial          Last Name

Street Address

County, City                                     State                          Zip Code

Telephone Number                          Email Address (if available)

### B.   Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

Name

Address where defendant may be served

County, City                              State                          Zip Code

Defendant 2:

Name

Address where defendant may be served

County, City                              State                          Zip Code

Defendant 3:

_____
Name

_____
Address where defendant may be served

_____
County, City                    State              Zip Code

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

_____
Name

_____
Address

_____
County, City                    State              Zip Code

## III.    CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐   **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

    The defendant discriminated against me because of my (check only those that apply and explain):

    ☐   race: _____

    ☐   color: _____

    ☐   religion: _____

    ☐   sex: _____

    ☐   national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

     My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

     I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

     My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

     My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.   Other Claims

In addition to my federal claims listed above, I assert claims under:

☐ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.  STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☐   did not hire me

☐   terminated my employment

☐   did not promote me

☐   did not accommodate my disability

☐   provided me with terms and conditions of employment different from those of similar employees

☐   retaliated against me

☐   harassed me or created a hostile work environment

☐   other (specify): _____

_____

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

_____

_____

_____

_____

_____

_____

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.     ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☐   Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?   _____

☐   No

Have you received a Notice of Right to Sue from the EEOC?

☐   Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?   _____

When did you receive the Notice?   _____

☐   No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

☐   direct the defendant to hire me

☐   direct the defendant to re-employ me

☐   direct the defendant to promote me

☐   direct the defendant to reasonably accommodate my religion

☐   direct the defendant to reasonably accommodate my disability

☐   direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Street Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

> If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.



**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____


_____
Name (Last, First, MI)


_____
Address                 City                 State                 Zip Code


_____
Telephone Number                          E-mail Address


_____
Date                                      Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

# <u>Notice For Pro Se Litigants</u>

As a public health precaution, the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants has temporarily suspended all in-person client meetings as of Tuesday, March 17, 2020.

Limited scope legal assistance will continue to be provided, but only by appointment and only over the phone. During this time, we cannot assist walk-in visitors to the clinic.

If you need the assistance of the clinic, please call <u>212-659-6190</u> and leave a message, including your telephone number, and someone will get back to you as soon as possible. If you do not leave a message with your telephone number, we cannot call you back.

Please be patient because our responses to your messages may be delayed while we transition to phone appointments.



